JUDGE COTE           **11 CIV 8755**

**United States District Court**
**Southern District of New York**

---

**Cranshire Capital Master Fund, Ltd.,**

        Plaintiff,

v.

**Advanced Cell Technology, Inc.,**

        Defendant.

---

Docket No.

**COMPLAINT**

---

    Plaintiff Cranshire Capital Master Fund, Ltd. ("Cranshire Fund"), by its attorneys, for its Complaint, respectfully alleges:

    1.    Under its contract with defendant Advanced Cell Technology, Inc. ("ACTI"), Cranshire Fund is entitled to the immediate delivery of a minimum of 12,680,094 shares of ACTI's common stock. Without justification or cause, ACTI has refused to honor its contractual obligations, causing irreparable harm and damage to Cranshire Fund.

## PARTIES

    2.    Plaintiff Cranshire Capital Master Fund, Ltd., is a Cayman Islands corporation, maintaining its principal place of business in the Cayman Islands.

    3.    Upon information and belief, Defendant Advanced Cell Technology, Inc. is a Delaware corporation, maintaining its principal place of business in either Marlborough, Massachusetts or Santa Monica, California.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because this action is between a citizen of a foreign state and a citizen of a state and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5.  Venue is proper in this District pursuant to 28 U.S.C. §1391 because this is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property which is the subject of the action is situated, and because it is the exclusive district in which defendant ACTI agreed that claims such as those in this complaint can be brought.

6.  Moreover, in the relevant agreements, ACTI irrevocably waived, and agreed not to assert that it is not personally subject to the jurisdiction of this Court or that this Court is an improper or inconvenient venue for such an action.

## FACTUAL BACKGROUND

### The Original Purchase and Subsequent Assignment of the Warrants.

7.  On August 30, 2006, August 31, 2007, and March 31, 2008, Cranshire Capital, L.P. ("Cranshire LP") purchased securities from ACTI, *inter alia*, warrants ("Warrants") entitling Cranshire LP to purchase a total of 2,059,857 shares of ACTI common stock ("Warrant Shares"). The purchases (including of the Warrants) were made pursuant to the terms of various Securities Purchase Agreements.

8.  Section 4(a) of the Warrants permitted Cranshire LP to transfer its Warrants if it delivered to ACTI: (a) the transferred Warrants; (b) the executed form of assignment that was attached to the Warrants; and (c) funds sufficient to pay any required transfer taxes. Upon such

2

an assignment, the Warrants could be exercised by the new holder for the purchase of Warrant Shares without having the new Warrants issued.

9. Pursuant to an Asset Contribution and Assumption Agreement and a Bill of Sale, Cranshire Fund acquired the Warrants and all rights thereunder by assignment on October 1, 2011.

10. On October 24, 2011, in accordance with Section 4(a) of the Warrants, Cranshire LP delivered to ACTI: (a) the Warrants Cranshire LP had transferred to Cranshire Fund on October 1, 2011; and (b) fully executed assignment forms. No transfer taxes needed to be paid. Cranshire LP thus complied with all the requirements to properly transfer the Warrants to Plaintiff Cranshire Fund.

**Terms of the Warrants.**

11. By their terms, the Warrants permit Cranshire LP and now Cranshire Fund (collectively "Cranshire") to exercise them, in whole or in part, at any time and from time to time during the term of the Warrants to obtain Warrant Shares.

12. Under Section 2(a) of the Warrants, the Warrants permit Cranshire to exercise them by paying cash, *i.e.*, the exercise price of the Warrants multiplied by the number of Warrant Shares subject to the applicable exercise. Alternatively, under specific circumstances, Section 2(c) permits a cashless exercise of the Warrants pursuant to a preset formula.

13. To induce the purchase of the Warrants, ACTI agreed under Section 3(b) of the Warrants, that the initial Exercise Price of the Warrants is subject to automatic downward adjustment in the event ACTI thereafter issued shares, or securities convertible into shares, at a price that was lower than the initial Exercise Price ("New Exercise Price").

14. In the event that ACTI thereafter issued shares, or securities convertible into shares at a price below the initial Exercise Price, Section 3(b) of the Warrants provides for the automatic: (a) reduction of the Exercise Price of the Warrants to the New Exercise Price so that the price of the shares obtainable upon exercise of the Warrants is at the New Exercise Price; and (b) a corresponding increase in the number of Warrant Shares covered by the Warrants so that the aggregate exercise price of the Warrants, upon exercise of the entire Warrants, would remain the same immediately following such automatic decrease of the Exercise Price.

15. Sections 3(b) and (g) of the Warrants also require ACTI to notify Cranshire promptly of any event that causes an automatic reduction of the Exercise Price and a commensurate automatic increase in the number of Warrant Shares issuable upon exercise of the Warrants. Specifically, ACTI is obligated to provide Cranshire with a statement setting forth the facts relating to such adjustment, including the applicable issuance price, or applicable reset price, exchange price, conversion price and other pricing terms.

**Cranshire Fund's Right To Specific Performance and ACTI Waiver Of Defenses.**

16. To induce the purchase of the Warrants, ACTI agreed in Section 5(j) that: (a) Cranshire would be entitled to specific performance, *i.e.*, injunctive relief, to enforce its rights under the Warrants; (b) monetary damages would not be an adequate remedy for any contractual breach; and (c) ACTI would waive its defenses in any action for specific performance that a remedy at law would be adequate.

**Cranshire's Warrant Shares Increased in Number on or about July 29, 2009, and Cranshire Exercised Warrants in Full for Warrant Shares on December 22, 2010.**

17. Pursuant to the terms of a Consent, Amendment and Exchange Agreement dated July 29, 2009, the number of Warrant Shares available under the Warrants increased from 2,059,857 to 6,918,197 and the Exercise Price was reduced to $0.10 per share.

18. On or about December 22, 2010, Cranshire LP exercised its Warrants on a cashless basis at the exercise price of $0.10 per share, intending to exercise all of its Warrants in full as evidenced by the payment of the aggregate exercise price of $691,819.34 (which was the aggregate maximum amount due under the Warrants upon exercise in full of the Warrants) through the withholding of shares via the cashless exercise provisions of the Warrants.

**The JMJ Financial Securities Transaction and its Effect on the Warrants.**

19. Upon information and belief, in early 2010, ACTI issued securities to JMJ Financial, Inc. ("JMJ"), which automatically reduced the Exercise Price of the Warrants and automatically increased the number of Warrant Shares for which the Warrants were exercisable.

20. Contrary to the requirements of Sections 3(b) and (g) of the Warrants, upon the issuance of the securities to JMJ (or any other share issuance since November 12, 2009), ACTI failed to provide to Cranshire the required notice described in paragraph 15 above.

21. ACTI's public filings indicate that since the beginning of 2010, ACTI issued securities (including in the JMJ transaction) that, under Section 3(b) of the Warrants, had the effect of: (a) automatically reducing the Exercise Price to $0.0353 per share, and likely to an even lower price, prior to Cranshire LP's exercise in full of the Warrants in December 2010; and (b) increasing the number of Warrant Shares from 6,918,197 to 19,598,292.

5

22. Consequently, unbeknownst to Cranshire LP at the time it exercised its Warrants in full in December 2010 and paid at the time of such exercise the aggregate exercise price of $691,819.34 (which was the aggregate maximum amount due under the Warrants upon exercise in full of the Warrants) through the withholding of shares via the cashless exercise provisions of the Warrants, the Exercise Price of the Warrants was $0.0353 per share and the total number of Warrant Shares issuable upon exercise in full of the Warrants and payment of such maximum aggregate exercise price (through the withholding of shares pursuant to the cashless exercise feature of the Warrants) was $19,598,292 rather than $6,918,197.

23. Accordingly, upon payment by Cranshire LP of such aggregate exercise price on a cashless basis (which was accomplished by the withholding of 2,709,830 shares of ACTI in the aggregate pursuant to the cashless exercise provisions of the Warrants), ACTI was required to deliver 16,888,462 Warrant Shares to Cranshire LP, which was the difference between the total number of shares issuable upon exercise of the Warrants (19,598,292 shares) and the total number of shares required to be withheld pursuant to the cashless exercise provisions of the Warrants as payment of the aggregate exercise price (2,709,830 shares). However, ACTI only delivered 4,208,368 Warrants Shares to Cranshire LP. Thus, Cranshire Fund, as Cranshire LP's assignee and successor-in-interest, is entitled to immediate delivery of at least an additional 12,680,094 Warrant Shares.

24. Cranshire Fund will not know the exact number of Warrant Shares to which it is entitled to receive (that are in addition to the 12,680,094 Warrant Shares that ACTI is required to immediately deliver to Cranshire) until ACTI complies with its obligation to provide the details of all share issuances since July 29, 2009, at prices lower than the applicable Exercise Price.

25.   Upon information and belief, ACTI does not dispute that Cranshire Fund is entitled to an additional 12,680,094 Warrant Shares. However, ACTI refuses to immediately issue these Warrant Shares to Cranshire Fund. There is no valid basis for ACTI to refuse to immediately deliver the Warrants, and ACTI's refusal subjects Cranshire Fund to irreparable harm.

26.   First, ACTI has 1,750,000,000 shares of common stock authorized for issuance under its certificate of incorporation, of which only 1,704,659,759 shares are issued and outstanding on November 2, 2011 (as reported by ACTI in its 10-Q filed with the SEC on November 8, 2011 (the "2011 10-Q") plus 18,000,000 shares ordered to be issued by Judge Engelmayer on November 10, 2011, as described below). Therefore, ACTI still has 45,340,241 shares of common stock available for issuance under its certificate of incorporation and Cranshire Fund is only seeking 12,680,094 shares to be immediately issued to it. Thus, no increase in ACTI's authorized number of shares is required for the issuance of the 12,680,094 shares to Cranshire Fund when ACTI has 45,340,241 shares available for issuance under its certificate of incorporation.

27.   Second, Cranshire Fund should not be penalized for ACTI's own actions that have resulted in ACTI running low on the number of shares available for issuance. As described above, ACTI has a sufficient number of shares available for issuance under its certificate of incorporation to be immediately issued to Cranshire Fund. Also, ACTI only had 1,439,826,362 shares issued and outstanding on December 31, 2010 (as reported by ACTI in its 10-K for 2010 filed with the SEC on March 17, 2011 (the "2010 10-K")), which means that ACTI had at least 310,173,638 shares available for issuance under its certificate of incorporation in December 2010 when Cranshire exercised the Warrants in full and ACTI was required to deliver the 12,680,094

7

shares to Cranshire that Cranshire Fund is currently seeking. Furthermore, ACTI has issued and delivered (and obtained substantial benefits from the issuance and delivery of) at least 264,833,397 shares of common stock to other persons since Cranshire's December 2010 exercise of its Warrants (based on 1,439,826,362 shares issued and outstanding on December 31, 2010 as reported by ACTI in its 2010 10-K and 1,686,659,759 shares issued and outstanding on November 2, 2011 as reported by ACTI in its 2011 10-Q plus 18,000,000 shares ordered to be issued by Judge Engelmayer on November 10, 2011, as described below)).

28. Third, of the 264,833,397 shares of common stock issued by ACTI (at a minimum) since Cranshire's December 2010 exercise, 57,514,859 shares have been issued and delivered to two other plaintiff-investors that brought suits against ACTI before Judges Paul A. Crotty (involving 39,514,859 shares) and Paul A. Engelmayer (involving 18,000,000 shares), raising precisely the same claims that Cranshire Fund does now, *i.e.*, that ACTI owed the two investors large amounts of additional Warrant Shares by virtue of anti-dilution provisions in those plaintiff-investors' warrants that are virtually identical to like provisions in the Cranshire Fund Warrants. All of these anti-dilution provisions were all triggered by the same incident-- ACTI's transaction with JMJ. In the prior suits before Judges Crotty and Engelmayer, ACTI argued that it could lacks sufficient authorized and issued shares to satisfy all similar potential claims arising out of ACTI's transaction with JMJ. Nevertheless, in each of these cases, when Judges Crotty and Engelmayer found this argument to be baseless and ordered ACTI immediately to deliver the required shares, ACTI complied.

29. Fourth, further delay by ACTI in delivery of the 12,680,094 shares to Cranshire Fund could result in a substantial loss in value of ACTI's common stock, which is very volatile. Such a loss in value would generate money damages that ACTI does not have the ability to pay.

## FIRST CAUSE OF ACTION

### (Failure To Deliver Shares - Relief Sought: Preliminary and Permanent Injunction)

30. Cranshire Fund realleges paragraphs 1 through 29 above.

31. Pursuant to the Warrants, ACTI is obligated to immediately deliver to Cranshire Fund at least 12,680,094 shares of its common stock.

32. Despite its contractual obligation to do so, ACTI has failed and refused to deliver said shares of stock to Cranshire Fund.

33. Because the terms of the Warrants plainly require ACTI to deliver the requested shares of common stock to Cranshire Fund and ACTI has failed to comply, Cranshire Fund's likelihood of success on the merits is clear and substantial.

34. In the absence of injunctive relief, Cranshire Fund will suffer irreparable harm because, *inter alia*: (a) money damages are inadequate because compelling compliance rather than simply awarding money damages reinforces the sanctity of bargains between corporations and investors; (b) the parties agreed that ACTI's failure to comply with its contractual obligations would cause Cranshire Fund irreparable harm, *i.e.*, could not be adequately compensated by money damages; and (c) it is unlikely that ACTI will be able to satisfy any ultimate damage award given that ACTI is in a perilous financial state -- it continues in business only by raising new funds by selling new securities and by paying its debt with stock instead of cash; ACTI admits that it never has earned a profit and does not anticipate any significant revenues in the foreseeable future.

35. As a result of ACTI's refusal to deliver the shares of common stock to Cranshire Fund, Cranshire Fund has been injured.

36. Cranshire Fund requests, therefore, that the Court enter an order requiring ACTI to deliver immediately at least 12,680,094 shares of its common stock to Cranshire Fund.

## SECOND CAUSE OF ACTION
(Failure to Deliver Shares - Relief Sought: Damages)

37. Cranshire Fund realleges paragraphs 1 through 36 above.

38. As a result, due to ACTI's failure to comply with the terms of the Warrants, Cranshire Fund has suffered damages.

39. Cranshire Fund, therefore, seeks an award of damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
(Failure to Provide Notice of Reduction of Exercise Price- Relief Sought: Damages)

40. Cranshire Fund realleges paragraphs 1 through 39 above.

41. Although obligated to do so pursuant to the Warrants, ACTI failed to provide the notices and calculations related to the automatic reduction in the Exercise Price of Cranshire Fund's Warrants and concomitant automatic increase in the number of Warrant Shares.

42. Due to ACTI's failure to comply with the terms of the contract, Cranshire Fund has suffered damages.

43. Cranshire Fund, therefore, seeks an award of damages in an amount to be determined at trial.

## Prayer for Relief

Wherefore, Plaintiff Cranshire Capital Master Fund, Ltd. seeks judgment against Defendant Advanced Cell Technology, Inc. as follows:

i) On the First Cause of Action, Cranshire Fund requests an order requiring ACTI to deliver immediately at least 12,680,094 shares of its common stock to Cranshire Fund; and

ii) On the Second and Third Causes of Action, Cranshire Fund requests damages in an amount to be determined at trial; and

iii) On all claims for relief, for interest, attorneys fees, and the costs and disbursements of this action; and

iv) An award to Plaintiff for such other, further and different relief as the Court deems just and proper.

Dated: December 1, 2011

By: _____
Philip H. Cohen
GREENBERG TRAURIG LLP
200 Park Avenue
New York, N.Y. 10166
(212) 801-9200
cohenp@gtlaw.com

Scott Mendeloff (*pro hac* application to be filed)
Gabriel Aizenberg (*pro hac* application to be filed)
GREENBERG TRAURIG LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601

On *behalf of Plaintiff Cranshire Capital Master Fund Ltd.*