UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CRANSHIRE CAPITAL MASTER FUND, LTD., <br><br> Plaintiff, <br><br> -against- <br><br> ADVANCED CELL TECHNOLOGY, INC., <br><br> Defendant. | **DECLARATION OF** <br> **MITCHELL P. KOPIN** |

Mitchell P. Kopin, declares under the penalty of perjury, pursuant to 28 U.S.C. 1746, that:

1. I am the President of Cranshire Capital Advisors, LLC, which is the investment manager for each of plaintiff Cranshire Capital Master Fund, Ltd. ("Cranshire Fund"), a Cayman Island corporation that maintains its principal place of business in the Cayman Islands, and nonparty Cranshire Capital, LP ("Cranshire LP"), an Illinois limited partnership.

2. I am over 18 years of age and have personal knowledge of the matters set forth herein.

3. On December 9, 2011, ACTI responded to the interrogatory Cranshire Fund served upon ACTI in the above-captioned case. In Exhibit A to its interrogatory response (the "ACTI Interrogatory Response"), ACTI purports to set out the dates, number of shares, and prices at which its securities were converted or exercised during the time period July 29, 2009-November 15, 2011. Based upon this and other publicly available information, Cranshire Fund has calculated the effective price (i) at which ACTI's shares of common stock were offered, sold or issued to JMJ and (ii) at which JMJ was entitled to receive shares of ACTI's common stock,

in each case, prior to the time that Cranshire Fund's Warrants were exercised on December 22, 2010.

4. In ACTI's most current 10-Q, filed November 8, 2011, the section entitled Convertible Promissory Notes, states that in 2010, ACTI issued three convertible promissory notes to JMJ, for a total of $3,000,000 available in cash, for a principal sum of $3,850,000. A true and correct copy of the relevant portion of ACTI's most-recent 10-Q is attached as **Exhibit M** to my declaration dated December 1, 2011.

5. In addition, according to ACTI's November 8, 2011 10-Q filing, JMJ could convert all or part of the Notes into shares of ACTI's common stock at the conversion price equal to the lesser of: (a) $0.10 per share, or (b) 85% of the average of the three lowest trade prices in the 20 trading days prior to the conversion.

6. True and correct copies of the Notes (Note A-03302010a, Note A-03302010b, and Note A-03302010c), which were exhibits to ACTI's May 10, 2010 10-Q are attached hereto as **Exhibit O**. The Notes themselves state that the conversion formula for the Notes reaches back 30 trading days, rather than 20 trading days. The terms of each of the Notes are also summarized in the Form S-1 that ACTI filed on May 10, 2010. A true and correct copy of the relevant portion of the Form S-1 is attached hereto as **Exhibit P**.

7. The ACTI Interrogatory Response discloses that on December 1, 2010, JMJ was issued shares of ACTI's common stock ("redemption 09-10 debenture") at $0.04 per share.

8. The ACTI Interrogatory Response further discloses that the Notes were converted on several different days in December 2010.

9. In this declaration, I focus upon Note A-03302010a ("Note A"). *See* **Exhibit O**. Note A was a $600,000 unsecured convertible note for a purchase price of $500,000. Under the

terms Note A, ACTI also had to pay a one-time interest payment of 10% of $60,000 of the principal of the Note A due on the maturity date of the note (March 30, 2013). Thus, JMJ invested $500,000 in exchange for $660,000 debt from ACTI -- for a total original issue discount of $160,000 or 24.24%.

10. Consistent with this, according to a Registration Rights Agreement, ACTI agreed that under Note A, JMJ was entitled to convert $660,000 into 6,600,000 shares. The Registration Right Agreement states that this share amount includes additional shares above the principal balance to cover for conversion of interest into shares at $0.10 per share. A true and correct copy of the Registration Right Agreement, which was an exhibit to ACTI's May 10, 2010 10-Q is attached hereto as **Exhibit Q**.

11. According to the ACTI Interrogatory Response, JMJ converted Note A for a total of 18,487,395 shares on December 8, 2010 (6,600,000 shares) and December 9, 2010 (11,887,395 shares). Because JMJ only paid $500,000 for Note A and received 18,487,395 shares of ACTI's common stock in connection with Note A, the effective price per share for ACTI's common stock received by JMJ in connection with Note A was $0.027045 ($500,000/18,487,395 shares).

12. The same effective price per share is reached when one applies the conversion formula for Note A, *i.e.*, 85% of the average of the three lowest trade prices of ACTI stock in the 20 trading days prior to the December 8 and 9, 2010 conversions of Note A, and then accounts for the 24.24% original issue discount for Note A.

13. According to Bloomberg Financial, the lowest three trade prices of ACTI in the 20 trading days prior to December 8 and 9, 2010 were $0.041 (11/17/10), $0.0415 (11/18/10), and $0.0435 (11/19/10). The average of these three lowest trade prices was $0.042 (0.126/3).

Eight-five percent of this average is $0.357 (0.042 * .85). Accounting for the total original issue discount for Note A, the effective price per share at which JMJ was entitled to convert Note A was $0.027045 (0.0357 * .757575758).

14. The anti-dilution provision in Section 3(b) in Cranshire Fund's Warrants was triggered when JMJ had the right to acquire shares of ACTI's common stock at price per share lower than $0.10 (or such lower Exercise Price of Cranshire Fund's Warrants). The ACTI Interrogatory Response further demonstrates that ACTI failed to properly adjust the Exercise Price under the Warrants in accordance with the anti-dilution provisions in the Warrants when Cranshire LP exercised the Warrants to acquire shares of ACTI on a cashless basis in or around December 22, 2010. Indeed, the ACTI Interrogatory Response shows that the Cranshire Warrants were exercised at $0.010 per share. True and correct copies of Cranshire LP's Notices Of Exercise are attached hereto as **Exhibit R**.

15. Despite its contractual obligations under Sections 3(b) and (g) of the Warrants to notify Cranshire LP promptly of any event that causes an automatic reduction of the Exercise Price and a commensurate automatic increase in the number of Warrant Shares issuable upon exercise of the Warrants, ACTI failed to provide the requisite notice on or before December 22, 2010.

16. The last line in the ACTI Interrogatory Response reveals that ACTI issued shares to Black Mountain Equities, Inc. ("Black Mountain") at $0.0300 per share in accordance with the preliminary injunction Judge Engelmayer entered against ACTI in *Black Mountain Equities, Inc. v. Advanced Cell Technology, Inc.*, 11 Civ. 7305 (S.D.N.Y.). I have reviewed the Black Mountain warrant. Its terms, including its anti-dilution provision, are virtually identical to the terms of the Cranshire Fund Warrants. A true and correct copy of the Black Mountain warrant,

which was attached to the publicly-filed Declaration of Adam Baker that Black Mountain filed in support of its motion for a preliminary injunction, is attached hereto as **Exhibit S**.

17. In **Exhibit T** hereto, on a copy of the relevant portion of the ACTI Interrogatory Response, Cranshire Fund has highlighted the JMJ, Cranshire, and Black Mountain conversions referenced above.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Dated: December 13, 2011

_____
Mitchell P. Kopin